**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 5 2005**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

JIMMY D. LACKEY,

       Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner, Social Security
Administration,

       Defendant-Appellee.

No. 04-7041
(D.C. No. 03-CV-227-WH)
(E.D. Okla.)

ORDER AND JUDGMENT  *

Before **EBEL** , **BALDOCK** , and **KELLY** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

*     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff Jimmy D. Lackey appeals from a district court order affirming the Commissioner's denial of his application for social security disability benefits. We examine the record as a whole to determine whether the Commissioner's decision is supported by substantial evidence and adheres to applicable legal standards, though the scope of our review is limited to issues the plaintiff has preserved and presented on appeal. *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004). Plaintiff raises one legal issue: whether the failure of the administrative law judge (ALJ) to address the records of an examining physician, Dr. Metcalf, requires reversal. Adhering to the applicable regulations and circuit precedent, we hold that it does.

The ALJ found that plaintiff, now fifty-seven years old, suffered from both a severe physical impairment (chronic back pain from degenerative disk disease aggravated by injury) and a severe mental impairment (bipolar disorder). These precluded plaintiff's return to his past work, from which he had no transferable skills. The ALJ found that he did, however, have a residual functional capacity (RFC) for light work, excluding repetitive bending or twisting, close attention to detail, the exercise of independent judgment, and any more than minimal public contact. A vocational expert cited several jobs satisfying these restrictions, which the ALJ relied on to deny benefits at step five of the controlling analysis. *See, e.g.*, *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005).

The ALJ noted that plaintiff's disability claim was facially supported by his treating physician, Dr. Rother, and his treating psychiatrist, Dr. Kula. Indeed, if accepted, Dr. Rother's assessment of plaintiff's physical limitations alone would negate the ALJ's light RFC determination and require a finding of disability. [1] *See* App. at 303-06. But the ALJ discounted Dr. Rother's assessment in part as being "inconsistent with the other substantial evidence in the record." *Id.* at 17. While this aspect of the ALJ's analysis is not directly challenged here, it is significant in that it underscores the corroborative importance of Dr. Metcalf's opinions as an examining physician. Thus, though Dr. Metcalf's opinions might not establish plaintiff's disability per se, they nevertheless had two material roles to play in the analysis of this case. First, they are relevant, albeit not controlling, evidence of plaintiff's disability in their own right and second, they figure in the analysis of the weight to be accorded Dr. Rother's potentially dispositive treating-physician findings. We turn, then, to a consideration of Dr. Metcalf's records.

---

[1] Some limitations recognized in Dr. Rother's assessment would preclude work at any RFC. But even just considering his negation (through standing and lifting restrictions) of the light RFC found by the ALJ, the difference between a light and sedentary RFC here would have been dispositive of plaintiff's disability under the Medical-Vocational Guidelines. *See* 20 C.F.R. pt. 404, subpt. P., app. 2, § 201.10 (directing decision of "disabled" for sedentary individual closely approaching advanced age without transferable skills if less than full high school education), § 201.14 (same for high school graduate if education did "not provide for direct entry into skilled work," i.e., if education was not completed in recent past for entry into sedentary work, *id.*, § 201.00(g)).

Dr. Metcalf examined plaintiff several times between July 1997 and October 1998. *See id.* 247-76. During this period, an MRI revealed lumbar disc bulges at L3-4 and L4-5, and a markedly degenerative disc space at the L5-S1 level. *See id.* at 244-46. Consistent with this condition, Dr. Metcalf noted limited mobility and pain associated with plaintiff's lower back preventing his return to work throughout this time. In his last report of October 28, 1998, Dr. Metcalf made it clear that this impairment was permanent. *See id.* at 250. Using workers' compensation terminology, he quantified the extent of the impairment in two ways: (1) "29% permanent impairment to the whole man due to the injury sustained to his lower back," broken down as "22% permanent impairment due to limited range of motion of the lumbar spine" and "7% permanent impairment due to the unoperated degenerative disk disease"; and (2) "100% permanent and total economic disability for the performance of ordinary manual labor or any job for which [plaintiff] is qualified by reason of education or past work experience." *Id.* Earlier, when asked to rate plaintiff's capacity in terms more meaningful to social security disability generally – and more specifically relevant here – Dr. Metcalf indicated plaintiff was capable of only sedentary, not light, work. *Id.* at 257.

Agency regulations reflected in our circuit precedent prescribe how medical opinions are to be evaluated. Unless a treating physician's opinion entitled to controlling weight is involved, 20 C.F.R. § 404.1527(d) directs the ALJ to

"consider all of the [factors set out in § 404.1527(d)(1)-(6)] in deciding the weight [to] give any medical opinion." If upon considering these factors the ALJ discounts a medical opinion, the ALJ must "provide specific, legitimate reasons for rejecting it." *Doyal v. Barnhart*, 331 F.3d 758, 764 (10 th Cir. 2003). As this regulatory directive applies to *any* medical opinion, it includes medical opinions of an examining physician like Dr. Metcalf. *See id.* Indeed, § 404.1527(d)(1) specifically gives added weight to medical sources that, rather than merely reviewing records, have examined the claimant.

Not all of a physician's opinions are "medical opinions," however. That term is reserved for "judgments about the nature and severity of [a claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical and mental restrictions." 20 C.F.R. § 404.1527(a)(2). In contrast, judgments that go beyond purely medical findings to reach "issues reserved to the Commissioner" – such as the claimant's RFC, whether he meets or equals a listing at step three, application of vocational factors, and the ultimate question of disability –"are not medical opinions, as described in paragraph (a)(2) of this section." *Id.*, § 404.1527(e). *See* 65 Fed. Reg. 11866, 11868, 11870 (Mar. 7, 2000) ("amending [§ 404.1527(e)] by adding an introductory paragraph to distinguish opinions on issues reserved to the Commissioner from medical opinions," and changing heading of regulation "from

'Evaluating medical opinions about your impairment(s) or disability' to 'Evaluating opinion evidence' to more accurately identify the content of th[is] section[]," since "the term 'medical opinion' means . . . judgments about the nature and severity of an individual's impairments, but [§ 404.1527] address[es] other types of opinions too").

This distinction is important. The agency "will not give any special significance to the source of an opinion on issues reserved to the Commissioner." 20 C.F.R. § 404.1527(e)(3); *see* Soc. Sec. Ruling (SSR) 96-5p, 1996 WL 374183, at *2 (July 2, 1996). Even the opinions of treating physicians "are never entitled to controlling weight or special significance" on such issues. SSR 96-5p, 1996 WL 374183, at *2; *see* SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996) (noting that for treating source opinion to be entitled to controlling weight, it "must be a 'medical opinion'" as defined "[u]nder 20 CFR 404.1527(a)"). More generally, the multi-factor evaluative scheme in § 404.5127(d) is directed at "[h]ow we weigh medical opinions" and, appropriate to that task, includes factors relating specifically to the nature of the medical source, *see* § 404.1527(d)(1), (2), (5). As § 404.1527(e) and SSR 96-5p pointedly distinguish and exclude medical opinions and discount the significance of an opinion's medical source, the analysis guided by § 404.1527(d) and our associated case law, *see, e.g.*, *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10 th Cir. 2004), does not strictly apply.

Nevertheless, the ALJ must "evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner." SSR 96-5p, at *3. Thus, while § 404.1527(e) and SSR 96-5p constrain the evaluative process under § 404.1527(d), the ALJ must still assess "the extent to which the opinion is supported by the record" and, in doing so, "must apply the *applicable* factors" from § 404.1527(d). SSR 96-5p, at *3 (emphasis added). In particular, when assessing the probative value of an opinion under § 404.1527(e), it remains "appropriate to consider the supportability of the opinion [ *see* § 404.1527(d)(3)] and its consistency with the record as a whole [ *see* § 404.1527(d)(4)]." SSR 96-5p, at *3.

Applying these principles to the ALJ's analysis of Dr. Metcalf's records leads us to conclude that this case must be reversed and remanded for further proceedings. Some of what Dr. Metcalf said in his reports, including his finding of 100% total disability for any job plaintiff is qualified to perform by education or past work experience, falls under the scope of § 404.1527(e). On the other hand, his underlying diagnosis of lumbar sprain associated with the MRI results, his findings of limited range of motion, and his prognosis that the impairment involved is permanent all appear to fit within the definition of medical opinion set out in § 404.1527(a)(2). In any event, we need not pause long over the different

types of opinions here, because the ALJ's failure to mention Dr. Metcalf or his records *at all* clearly violates the Commissioner's own directives with regard to either § 404.1527(a)(2) or § 404.1527(e) opinions. "[W]hen, as here, an ALJ does not provide any explanation for rejecting medical [source] evidence, we cannot meaningfully review the ALJ's determination. Although we review the ALJ's decision for substantial evidence, we are not in a position to draw factual conclusions on behalf of the ALJ." *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) (citations and quotations omitted).

The Commissioner argues that Dr. Metcalf's records are "irrelevant to the period [under] review," because he expressed his final opinions several months before the alleged onset date of plaintiff's total disability. Aplee. Br. at 11. [2] No authority is cited for the proposition that medical reports prior to the operative onset date are categorically irrelevant and, indeed, our precedent is to the

---

[2] The Commissioner notes that plaintiff was trying to work at this time and contends that this engagement in substantial gainful activity belies Dr. Metcalf's finding of disability. Argument in this vein is undercut by the Commissioner's own record citations showing plaintiff's self-employment income at the time (under $3000 per year) to be considerably less than what is *presumptively insubstantial* for an employee under 20 C.F.R. § 404.1574(b), which (though not controlling) informs the analysis for self-employed claimants too, *see* 20 C.F.R. § 404.1575(a)(2). Plaintiff's testimony regarding his effort to work at this time, that he "tried [his] best" but "could not do it, physically or mentally," App. at 57, is certainly not indicative of a capacity for substantial gainful activity. In sum, the record is simply too scant for anything but speculation about the nature and effect of plaintiff's attempt to work at the time of Dr. Metcalf's report.

contrary. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1223 n.15 (10th Cir. 2004) (holding medical reports predating disability period at issue "are nonetheless part of [the claimant's] case record, and should have been considered by the ALJ"). And when, as here, a doctor reports that an impairment is permanent, the fact that the report precedes the designated disability period is of limited practical import. The Commissioner also asserts several reasons why Dr. Metcalf's opinion should not be deemed controlling or compel a finding of disability. But that is not the issue, as plaintiff does not – and need not – claim that Dr. Metcalf's report is sufficient by itself to conclusively demonstrate his disability. Rather, we are concerned with the necessarily incremental effect of the report on the aggregate assessment of the evidentiary record (and, in particular, on the evaluation of the potentially dispositive opinions of plaintiff's treating physician, Dr. Rother), which is a matter the ALJ must consider under the principles summarized above. Our role is to ensure that the ALJ satisfies this institutional obligation.

Finally, even leaving aside the lack of factual and legal support for the Commissioner's arguments on appeal, affirming the denial of benefits on the basis of such newly-mounted efforts to discredit Dr. Metcalf's reports would violate the prohibition on post hoc justification of administrative action. *See Robinson,* 366 F.3d at 1084-85. Nor do we see "the right exceptional circumstance" here for a harmless error approach: we cannot "confidently say that no reasonable

administrative factfinder," properly considering the materials from Dr. Metcalf in conjunction with the rest of the record, "could have resolved [the case] in any other way" than the ALJ did by neglecting those materials. *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10 th Cir. 2004).

The judgment of the district court is REVERSED and the cause is REMANDED with directions to remand, in turn, to the Commissioner for further administrative proceedings consistent with the principles discussed above.

Entered for the Court

David M. Ebel
Circuit Judge