**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**February 28, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

CHARLES D. SMITH,

   Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner of the Social Security
Administration,

   Defendant-Appellee.

No. 04-7027
(D.C. No. 03-CV-258-W)
(E.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **TACHA** , Chief Judge, **HENRY** , and **O'BRIEN** , Circuit Judges.

---

   After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

*  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff Charles D. Smith appeals the district court's affirmance of the defendant Social Security Commissioner's denial of supplemental security income (SSI) benefits. He argues that (1) the Administrative Law Judge (ALJ) erred in basing his decision on a hypothetical question not posed to the Vocational Expert (VE) and unsupported by the evidence and (2) the ALJ erred in failing to discuss why Mr. Smith's mental impairment did not meet a listing. We review the ALJ's decision only to determine whether the correct legal standards were applied and whether the ALJ's factual findings are supported by substantial evidence. *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). Reviewing pursuant to these standards, we conclude the ALJ failed to apply correct legal standards. Accordingly, we reverse and remand to the district court with instructions to remand to the Commissioner to conduct further proceedings.

This case has a lengthy procedural history. Mr. Smith applied for SSI benefits on July 15, 1993, alleging disability since July 18, 1983[1] from arthritic pain in his right knee, right ankle, neck, fingers and low back and cognitive

---

[1]    Mr. Smith previously filed an application for SSI benefits on April 6, 1992, alleging disability as of April 11, 1983. The application was denied initially and on reconsideration. Mr. Smith did not request further administrative review. Although the ALJ acknowledged the prior decision, he apparently proceeded using Mr. Smith's asserted disability date. We construe this as a partial de facto reopening of the prior denial of benefits. *Cf. Taylor ex rel. Peck v. Heckler*, 738 F.2d 1112, 1115 (10th Cir. 1984) (ALJ de facto reopened prior decision by reviewing case on merits and considering additional evidence).

difficulties. [2] The claim was denied initially and on reconsideration. After holding a hearing, the ALJ denied benefits. The Appeals Council remanded for further proceedings concerning Mr. Smith's subjective complaints, mental impairments and residual functional capacity (RFC), [3] including VE clarification of Mr. Smith's limitations based on hypothetical questions reflecting the specific limitations established in the record. Aplt. App., tab 4 at 426-27. After holding a second hearing, a different ALJ denied benefits. The Appeals Council remanded for a second time for further consideration of Mr. Smith's mental impairments and RFC. *Id.* at 488.

After a third hearing, the ALJ again denied SSI benefits. The ALJ found that Mr. Smith suffers from the severe mental impairments of major depression and borderline intellectual functioning, but that these impairments did not meet or equal a listing. *Id.* at 28, 37-38. The ALJ found no severe physical impairment likely to cause the severe pain alleged by Mr. Smith or any functional limitations. *Id.* at 28, 32. With respect to Mr. Smith's RFC, the ALJ found that Mr. Smith can understand and perform simple, but not complex or detailed, tasks; can interact

---

[2]     In his application, Mr. Smith alleged disability due only to right knee and lower back problems. Because he presented the other possible impairments, we consider those to have been properly before the ALJ. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 n.2 (10th Cir. 1997).

[3]     RFC is "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(c).

appropriately with others at a superficial, work-related level; can adapt to a work setting; and has moderate limitations in social functioning and concentration, persistence and pace. *Id.* at 38. Ultimately, the ALJ denied benefits at step five of the five-step sequential evaluation process, *see* 20 C.F.R. § 416.920, [4] finding that Mr. Smith can perform work existing in the national economy, including the janitor/cleaner, kitchen worker or packer jobs suggested by the VE.

The Appeals Council denied Mr. Smith's request for review, making the ALJ's decision the final decision of the Commissioner. *See Doyal*, 331 F.3d at 759. On judicial review, the district court adopted the magistrate judge's recommendation and affirmed the denial of benefits. Mr. Smith now appeals to this court.

I.

Mr. Smith first argues that the ALJ erred in basing a decision on a hypothetical question not posed to the VE and unsupported by the evidence. After the third hearing, the ALJ (and Mr. Smith's counsel) submitted various interrogatories to the VE. One interrogatory included the following hypothetical question, which the ALJ quoted and relied on in his decision:

---

[4] At step five, the Commissioner bears the burden of proving the claimant can perform work existing in the national economy. *See Dikeman v. Halter*, 245 F.3d 1182, 1184 (10th Cir. 2001).

-4-

a hypothetical person with the same age, education and work history as the claimant, who retains the residual functional capacity to lift and/or carry ten pounds frequently and 20 pounds occasionally, stand for about six hours total in an eight hour day, and sit for about six hour[s] total in an eight hour day.[5]  Additionally, this person can understand and perform simple tasks but not complex or detailed tasks.  He can act appropriately with others at a superficial work-related level and can adapt to a work setting.

Aplt. App., tab 4 at 40.  In response to this hypothetical, the VE indicated Mr. Smith could perform janitor/cleaner, kitchen helper and packer jobs.  The ALJ gave great weight to the VE's response, but decided Mr. Smith was not limited to light work as set forth in the hypothetical.  *See id.*

On appeal, Mr. Smith specifically asserts the following:  (1) the ALJ mistakenly found that the VE indicated Mr. Smith could make a vocational adjustment to work existing in the national economy; (2) despite the hypothetical's limitation to light work, the janitor/cleaner and kitchen helper jobs are medium, not light, work, yet the ALJ incorrectly found no inconsistency; (3) the ALJ submitted a hypothetical that did not precisely state Mr. Smith's impairments; and (4) the hypothetical did not include all of Mr. Smith's limitations.  We address each assertion in turn.

Mr. Smith asserts that the ALJ mistakenly found that the VE indicated that Mr. Smith could make a vocational adjustment to work existing in the national

---

[5]      This meets the definition of light work.      *See* 20 C.F.R. § 416.967(b).

economy. It is true that the VE did not explicitly make such a statement. But the VE's indication that Mr. Smith can perform three different jobs implicitly suggests that he can make a vocational adjustment to work existing in significant numbers in the national economy. And the hypothetical question stated Mr. Smith could adapt to a work setting. Thus, we reject this argument.

Mr. Smith correctly points out that the janitor/cleaner and kitchen helper jobs are medium, not light, work under the descriptions contained in the Dictionary of Occupational Titles, vol. 1 at 382.664-010, 318.687-010 (4th ed. 1991) (DOT). Despite the inconsistency between the hypothetical's limitation to light work and the VE's response including two medium work jobs, the ALJ determined there were no inconsistencies between the VE's response and the DOT information. Aplt. App., tab 4 at 40. Thus, we conclude Mr. Smith correctly faults the ALJ and VE for failing to note and explain these inconsistencies.

> [B]efore an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of nondisability, the ALJ must ask the expert how his or her testimony as to the exertional requirement of identified jobs corresponds with the [DOT], and elicit a reasonable explanation for any discrepancy on this point.

*Haddock v. Apfel*, 196 F.3d 1084, 1087 (10th Cir. 1999) (addressing both exertional and skill-level limitations conflicting with the DOT); *see Hackett v. Barnhart*, 395 F.3d 1168, 1175 (10th Cir. 2005) ("Social Security Ruling 00-4p[, 2000 WL 1898704, at *2 (SSR)] . . . requires a reasonable explanation for

conflicts between a VE's testimony and the DOT relating to any 'occupational information.'").

A reasonable explanation may be that the VE considered other information not listed in the DOT. SSR 00-4p, 2000 WL 1898704, at *2. And the VE in this case did indicate that he relied on sources other than the DOT. Aplt. App., tab 4 at 539-40. Although the ALJ recognized that the VE had relied on these other sources, the ALJ did not rely on the VE's use of these other sources to explain an inconsistency, because the ALJ found no inconsistency between the VE's responses and the DOT. *Id.* at 40. Where, as here, the DOT clearly classifies the kitchen helper and janitor/cleaner jobs as medium, not light, work and the VE does not supply any reason for classifying the exertional demands of these occupations differently than the DOT, the ALJ may not rely on the VE's indication that these jobs are light work. *See* SSR 00-4p, 2000 WL 1898704, at *3.

Next, Mr. Smith argues that the hypothetical question did not precisely state all of his impairments, and that the ALJ should not have listed physical limitations in the hypothetical if the ALJ believed Mr. Smith did not have any. It is settled that the hypothetical question "must include all (and only) those impairments borne out by the evidentiary record." *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995). "[T]estimony elicited by hypothetical questions that do not

relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) (quotation omitted).

The ALJ admits in his opinion that the hypothetical contained exertional limits he did not find. Nonetheless, he gave the VE's response great weight since the non-exertional limits the ALJ found were included in the hypothetical. It is unclear why the ALJ submitted, after the hearing and after a lengthy opportunity to review all of the medical evidence,[6] an interrogatory to the VE that did not match precisely Mr. Smith's impairments, particularly when the Appeals Council had directed on both remands that any hypothetical questions set forth the specific impairments reflected by the medical record. In any event, the inaccurate hypothetical is not sufficient reason for remand. Instead, remand is appropriate because it is unclear what level of jobs the ALJ actually determined Mr. Smith could perform. The ALJ initially stated that Mr. Smith can perform a significant range of light work, yet later stated he is not limited to light work. Aplt. App., tab 4 at 40. In his ultimate findings, the ALJ concluded Mr. Smith has the RFC

---

[6] The third ALJ hearing was held on October 20, 2000. The record was reopened in April and July of 2001 to receive additional medical evidence. Thereafter, on April 8, 2002, the ALJ sent interrogatories to the VE. The ALJ therefore had ample opportunity to craft a hypothetical question setting forth precisely the exertional and nonexertional impairments that the ALJ found Mr. Smith to have.

"to perform a significant range of work," but does not define what that range of work is. *Id.* at 41.

Lastly, Mr. Smith contends that the hypothetical did not include all of his limitations, including marginal functioning interrupted by episodes of self-defeating action and the impairment of deficiency in immediate memory, concentration and efficiency, even though the ALJ concluded Mr. Smith has deficiencies of concentration, persistence or pace. The hypothetical did indicate that Mr. Smith could adapt to a work setting, but the question did not incorporate the more specific findings concerning concentration, persistence or pace. Because the ALJ omitted, without explanation, impairments he found to exist, the hypothetical question was flawed. Although the VE had copies of the exhibits concerning Mr. Smith's RFC, there is no indication the VE knew that the ALJ had made a specific finding that was not included in the hypothetical question. As indicated above, hypothetical questions should be crafted carefully to reflect a claimant's RFC, because "[t]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision." *Hargis* , 945 F.2d at 1492.

Mr. Smith finally contends that the hypothetical question did not consider whether the three jobs required verbal skills, math skills, or work knowledge–all

areas in which he contends he has limitations. The record shows that Mr. Smith completed the eighth grade, has some problems reading, and can do arithmetic and make change. As the ALJ noted, Mr. Smith completed several SSI forms, took intelligence tests, and read and completed reports as part of his past work. The VE indicated that all three jobs he recommended are unskilled and that even if Mr. Smith is illiterate he can do these unskilled jobs. Thus, we conclude the ALJ did not err.

Because the ALJ failed to follow correct legal standards or give sufficient explanation supporting his RFC findings, we remand for further proceedings.

## II.

Next, Mr. Smith argues that the ALJ failed to mention what specific listing(s) the ALJ considered and failed to discuss why Mr. Smith did not meet any listing(s). Mr. Smith maintains he meets the listing for mental retardation, *see* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05, based on his full scale I.Q. score placing him in the borderline range of intellectual functioning and his limited abilities with written instructions; understanding, remembering and carrying out detailed instructions; and maintaining attention and concentration for extended periods of time.

"At step three, the ALJ determines whether the claimant's impairment is equivalent to one of a number of listed impairments that the [Commissioner]

-10-

acknowledges as so severe as to preclude substantial gainful activity." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (quotation omitted). The listing for mental retardation sets out four distinct ways to establish disability. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05(A)-(D). We focus here on listing § 12.05(C): [7] "[m]ental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period: i.e., the evidence demonstrates or supports onset of the impairment before age 22" [8] and "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."

Mr. Smith correctly argues that the ALJ did not specifically address listing § 12.05(C). The ALJ cites to the standard for evaluating mental evidence set forth at 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C). The § 12.00(C) criteria are appropriate for analyzing depression under listing § 12.04 and mental retardation under § 12.05(D). But the ALJ did not, however, recognize that the criteria for analyzing mental retardation under § 12.05(C) are different from those for depression or mental retardation under § 12.05(D). *See* Aplt. App., tab 4

---

[7]    In the district court, Mr. Smith referred to listing § 12.05(C) as the relevant listing. Aplt. App., tab 5 at 10.

[8]    One mental health examiner noted that Mr. Smith's cognitive functions had been the same throughout his life.

at 32, 37-38; 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A). Thus, it appears that the ALJ did not consider § 12.05(C) when he considered whether Mr. Smith met the listings. The ALJ's failure to specifically address listing § 12.05(C) is, under the facts of this case, reversible error, because we cannot engage in meaningful judicial review. *Cf. Clifton*, 79 F.3d at 1009 (holding that where ALJ does not discuss reasons for deciding claimant is not disabled at step three, or even identify relevant listings, and only summarily concludes claimant's impairments did not meet or equal listing, meaningful judicial review of conclusion is impossible); *see also Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) (holding meaningful appellate review is impossible where it would require drawing factual conclusions on ALJ's behalf and court would not be reviewing for substantial evidence).

Mr. Smith believes that the ALJ failed at step three to fully consider the opinions of his treating doctor, Dr. Davis, and erroneously rejected them without finding conflicting medical evidence. We first consider whether Dr. Davis was a treating doctor, *see Doyal*, 331 F.3d at 762, and conclude he was not. Mr. Smith first mentioned Dr. Davis at the third ALJ hearing and provided no treatment notes, even though Dr. Davis supposedly provided twenty years' of treatment. Thus, there is no evidence of an ongoing treatment relationship. *See* 20 C.F.R. § 416.902 (defining "treating source"). Because Dr. Davis was not a treating

doctor, his opinion is not entitled to controlling weight. *See Doyal*, 331 F.3d at 762-64.

Even if Dr. Davis's opinion is not entitled to controlling weight, his opinion is entitled to deference and must be weighed using the following factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (quotation omitted). "[I]f the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." *Id.* at 1301 (quotations omitted). "A treating physician's opinion may be rejected if his conclusions are not supported by specific findings." *Castellano v. Sec'y of HHS*, 26 F.3d 1027, 1029 (10th Cir. 1994).

Dr. Davis completed a fill-in-the-blanks form indicating that Mr. Smith suffered mild to marked impairments in understanding and memory, sustaining concentration and persistence, social interaction and adaptation. Dr. Davis, however, provided no explanation for these conclusions. Where a doctor's report consists solely of boxes checked on a form, the "evaluation forms, standing alone,

-13-

unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence." *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987).

The ALJ gave no weight to Dr. Davis's opinion because any limitations he expressed were based on Mr. Smith's statements to him and not upon the results of a professional treatment relationship, including examination or testing. Indeed, the record fails to show any visits by Mr. Smith to Dr. Davis in an office environment pursuant to an appointment. *See Doyal*, 331 F.3d at 764. The ALJ therefore gave specific, legitimate reasons for giving no weight to Dr. Davis's opinions.

### III.

After three tries, the ALJ still failed to (1) present a hypothetical to the VE that precisely set forth Mr. Smith's physical and mental limitations; (2) follow correct legal standards in analyzing the VE's recommendations; (3) discuss what Mr. Smith's actually RFC is and why he found Mr. Smith's RFC to be greater than that listed in the hypothetical; and (4) mention the relevant listing(s) and discuss why Mr. Smith did not meet the relevant listing(s). Accordingly, we REVERSE the judgment of the district court and REMAND to the district court with directions to remand to the Commissioner for further proceedings in accordance with correct legal standards.

ENTERED FOR THE COURT

-14-

PER CURIAM