**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 20, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

REYES A. RAMIREZ,

      Plaintiff-Appellant,

    v.

MICHAEL J. ASTRUE,[*]
Commissioner of Social Security
Administration,

      Defendant-Appellee.

No. 06-2068
(D.C. No. CIV-05-745-DJS)
(D. N.M.)

---

**ORDER AND JUDGMENT**[**]

---

Before **O'BRIEN**, **PORFILIO**, and **ANDERSON,** Circuit Judges.

---

Reyes A. Ramirez appeals from an order of the district court affirming the

Social Security Commissioner's denial of his applications for disability insurance

benefits and supplemental security income benefits under the Social Security Act.

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Michael J. Astrue is substituted for Jo Anne B. Barnhart as appellee in this appeal.

[**] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Exercising jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, we reverse and remand for further proceedings.

**I.**

Mr. Ramirez was born on December 20, 1959. He has a tenth grade education and prior work experience as a truck driver. Mr. Ramirez alleges that he has been unable to work since November 20, 2001, "due to a combination of 'severe' medical impairments, including: diabetes mellitus, hypertension, obesity, low back pain, bilateral knee pain, and asthma." Aplt. Opening Br. at 3-4 (emphasis deleted).

Mr. Ramirez's medical records are thoroughly summarized in great detail in the administrative and district court decisions that were entered in this matter, and we do not deem it necessary to repeat those summaries here. *See* Aplt. App., Vol. I at 14-18; Vol. II at 68-75. However, because it is relevant to our remand, we note that, in May 2002, Dr. G.T. Davis examined Mr. Ramirez and performed a physical consultative examination on behalf of the Commissioner. In his written "Evaluation," Dr. Davis concluded as follows:

> Examinee has problems with diabetes, apparently poorly controlled, hypertension that seems to be controlled, history of edema in the left leg greater than the right, possibly due to chronic venous insufficiency, history of left knee surgery with some residual complaints there, history of low back pain, history of visual disturbances, possibly due to shifting blood sugars, recent episodes of pneumonia, and now he is on oxygen apparently for 3-6 months.
>
> . . . .

At this point, given his multiple health problems, and the need for oxygen, it is unlikely he would be able to engage in any significant type of work activity until he is recovered. Once he gets his diabetes under control, he may be able to engage in more activities. He may have some ongoing limitations due to swelling in his leg, and perhaps some posttraumatic arthritis in his left knee. Please correlate with any other records or documents.

*Id.*, Vol. I at 128.

After Mr. Ramirez's applications for benefits were denied initially and on reconsideration, a de novo hearing was held before an Administrative Law Judge (ALJ) in October 2004. *Id.* at 184-94. Although a vocational expert (VE) was present at the hearing, *id.* at 184, the ALJ did not ask the VE any questions, *id.* at 186-90, 192-93.

In October 2004, the ALJ issued a written decision denying Mr. Ramirez's applications for benefits. In his decision, the ALJ went through the sequential evaluation process for determining disability and found: (1) at step one, that Mr. Ramirez had not engaged in substantial gainful activity since November 20, 2001, *id.* at 14; (2) at step two, that he suffered from severe medical impairments consisting of diabetes mellitus, hypertension, obesity, low back pain, knee pain, and asthma, *id.* at 15; (3) at step three, that none of his "impairments meet or medically equal . . a section of the Listing of Impairments," *id.*; and (4) at step four, that he retained "a residual functional capacity for a wide range of light work with occasional kneeling and crawling and avoid intense exposure to smoke, fumes, dust, high wind, extreme cold, and poorly ventilated spaces," *id.* at 18.

-3-

The ALJ then made the following additional findings at steps four and five of the

sequential evaluation process:

> The claimant's past relevant work as a truck driver was sedentary as he performed it. He could therefore perform his past relevant work as a truck driver because it is within [his] residual functional capacity. This would normally end my inquiry with a conclusion of "not disabled." However, because of the nature of his truck driving work, as a seasonal job, I will proceed with the step five analysis, which also leads me to a conclusion of "not disabled."

> At step five, the burden of proof shifts to the Social Security Administration to show that there are other jobs existing in significant numbers in the national economy that the claimant can perform. The claimant's age, education, and vocationally relevant past work experience, if any, must be viewed in conjunction with the Medical-Vocational Guidelines of Appendix 2 of Subpart P of the Regulations, which contain a series of rules that may direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's residual functional capacity and vocational profile. The Medical-Vocational Guidelines are used as a framework for the decision when the claimant cannot perform all of the exertional demands of work at a given level of exertion and/or has any significant nonexertional limitations.

> . . . .

> Because the claimant has the exertional capacity to perform substantially all of the requirements of light work, and considering the claimant's age, education, and work experience, a finding of "not disabled" is supported by application of Medical-Vocational Rule 202.17.

*Id.*; *see also id.* at 19-20 (finding: (1) that "[t]he claimant retains a residual

functional capacity to perform substantially all of the full range of light work";

(2) that, "[b]ased on an exertional capacity for light work, and the claimant's age,

education, and work experience, Medical-Vocational Rule 202.17 . . . would direct

-4-

a conclusion of 'not disabled'"; and (3) that "[t]he claimant's capacity for light work is substantially intact and has not been significantly compromised by any nonexertional limitations").

In May 2005, the Appeals Council denied Mr. Ramirez's request for review of the ALJ's decision. Mr. Ramirez then filed a complaint in the district court. In January 2006, the magistrate judge, sitting by consent of the parties and by designation of the district court pursuant to 28 U.S.C. § 636(c), entered a memorandum opinion and a related judgment affirming the ALJ's denial of Mr. Ramirez's applications for social security benefits. This appeal followed.

Because the Appeals Council denied review, the ALJ's decision is the Commissioner's final decision for purposes of this appeal. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). In reviewing the ALJ's decision, "we neither reweigh the evidence nor substitute our judgment for that of the agency." *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Instead, we review the ALJ's decision only "to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Doyal*, 331 F.3d at 760.

**II.**

In this appeal, Mr. Ramirez asserts that the ALJ committed two legal errors. First, he claims the ALJ "committed legal error by conclusively applying the Medical-Vocational Guidelines (the [g]rids) [at step five] when the claimant

-5-

suffered from non-exertional pain and environmental limitations that foreclosed the ALJ from applying the [g]rids without consulting a vocational expert."[1] Aplt. Opening Br. at 6. Second, he claims "the ALJ improperly determined [at step four] that the claimant could return to past relevant work as a truck driver without applying the legal analysis required under SSR 82-62 and Tenth Circuit case law." *Id.* As set forth below, we agree with Mr. Ramirez that the ALJ erred at step five by conclusively applying the grids without consulting a VE. Accordingly, we remand this matter to the Commissioner for further proceedings so that the necessary vocational evidence can be developed. With regard to the alleged error at step four, we conclude that the ALJ found that Mr. Ramirez's prior job as a truck driver did not qualify as past relevant work for purposes of step four. As a result, we further conclude that the ALJ in effect abandoned his step-four finding of "not disabled," and we therefore do not need to address it. As part of our

---

[1] We note that the ALJ stated in his decision that he was only using the grids as a "framework." *See* Aplt. App., Vol. 1 at 20, ¶ 13. However, because the ALJ failed to develop any vocational testimony, we agree with Mr. Ramirez that the ALJ in fact applied the grids conclusively to "direct" a finding of "not disabled." *See Ortiz v. Sec'y of Health & Human Servs.*, 890 F.2d 520, 524, n.4 (1st Cir. 1989) ("Despite what might be suggested by use of the word 'framework,' whenever an ALJ fails to take vocational testimony, he must be deemed in reality to have relied exclusively on the grid[s] to show the existence of jobs claimant could perform.") (quotation omitted). We also note that the ALJ made the findings that must be made in order to apply the grids conclusively (*i.e.*, he found that Mr. Ramirez could perform substantially all of the exertional requirements of light work and that his nonexertional impairments do not significantly limit the range of available light work jobs.).

remand, however, we direct the ALJ to make specific written findings explaining why he did not adopt Dr. Davis's opinion that Mr. Ramirez was unable to work when he assessed Mr. Ramirez's residual functional capacity (RFC) at step four.

## A. The Grids and Nonexertional Impairments.

The ALJ found that Mr. Ramirez's severe medical impairments have resulted in two separate nonexertional limitations that effect his RFC and thus his ability to work. First, the ALJ found that he must "avoid intense exposure to smoke, fumes, dust, high wind, extreme cold, and poorly ventilated spaces." Aplt. App., Vol. I at 18. Second, the ALJ found that he must be limited to only "occasional kneeling and crawling." *Id.*

Because he suffers from these nonexertional limitations, Mr. Ramirez contends that the ALJ erred at step five when he conclusively applied the grids to find him not disabled without consulting a VE. Although this is an error that should be easy to remedy on remand, we agree that it is in fact reversible error.

As a general rule, the grids may not be applied conclusively if the claimant has nonexertional impairments that prevent him from performing "most" (*i.e.*, a "substantial majority") of the jobs within a particular exertional category. *See Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993). Consequently, in the case of a claimant who suffers from nonexertional impairments, or a combination of exertional and nonexertional impairments, that prevent him from performing most of the jobs at a particular exertional level, the grids may be used only as a

guide or framework, and the Commissioner must prove through expert vocational testimony that jobs exist in the national economy which the claimant can perform. *Id.* at 1488, 1491-92; *see also Channel v. Heckler*, 747 F.2d 577, 579-83 (10th Cir. 1984); 20 C.F.R. §§ 404.1569a and 416.969a; 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00.

We have also recognized, however, that "a nonexertional impairment can have a negligible effect on the range of jobs available." *Talbot v. Heckler*, 814 F.2d 1456, 1465 (10th Cir. 1987). Thus, "an ALJ may . . . rely conclusively on the grids [if] he finds (1) that the claimant has no significant nonexertional impairment, . . . and [2] that the claimant can perform most of the jobs [at a particular exertional] level," but "[e]ach of these findings must be supported by substantial evidence." *Thompson*, 987 F.2d at 1488.

We have also noted, albeit in dicta, that "[s]ome kinds of nonexertional impairments may lend themselves to a determination by the ALJ as to whether their impact on the range of jobs is significant." *Talbot*, 814 F.2d at 1465 n.6. Importantly, however, in *Talbot*, we specifically recognized that environmental restrictions may not lend themselves to such treatment. *Id.* at 1464-65 (discussing, in dicta, an environmental restriction to "avoid work in environments with excessive dust, fumes, or gases," and stating that, "[a]rguably, only vocational testimony could have provided sufficient data as to whether substantially all of the jobs in the light work category could accommodate the claimant's environmental

restrictions"); *see also Allen v. Sec'y of Health & Human Servs.*, 726 F.2d 1470, 1472-73 (9th Cir. 1984) (reversing ALJ's conclusive application of grids to find that claimant was not disabled and remanding for development of vocational evidence concerning whether claimant's environmental restrictions as a result of respiratory problems limited his ability to perform a significant number of sedentary jobs). But because the question was not properly before us in *Talbot*, we refused "to determine whether environmental restrictions are by their nature the kind of nonexertional impairment that requires vocational testimony in order to determine the extent of the erosion of the occupational base," *id.* at 1465 n.6, and it appears that this is still an open question in this circuit.

As noted above, the ALJ found that Mr. Ramirez must "avoid intense exposure to smoke, fumes, dust, high wind, extreme cold, and poorly ventilated spaces." Aplt. App., Vol. I at 18. These are nonexertional environmental restrictions that are related to his asthma.[2] The ALJ also found, however, that Mr. Ramirez's "capacity for light work is substantially intact and has not been significantly compromised by any nonexertional limitations." Aplt. App., Vol. I

---

[2] We note that Mr. Ramirez is not contending that the ALJ should have imposed more environmental restrictions due to his asthma. Instead, his step-five arguments concerning his asthma are focused exclusively on the need for vocational evidence to support the ALJ's conclusive use of the grids. *See* Aplt. Opening Br. at 8-10.

at 20, ¶ 13.  We interpret this statement to be a finding by the ALJ that Mr.

Ramirez's environmental restrictions are insignificant from a vocational standpoint

and do not prevent him from performing most of the jobs in the light work

category.  Although this may in fact be the case, out of an abundance of caution,

we conclude that the ALJ needs to support this finding with testimony from a

vocational expert.  *Cf. Talbot*, 814 F.2d at 1465 (rejecting, in dicta, argument that

"use of the term 'excessive' modifying dust, fumes, and gases in itself establishes

that the [environmental] restriction is insignificant," and noting that "such an

argument is straining at gnats and swallowing camels").  We must therefore

remand this case to the Commissioner so that the necessary vocational evidence

can be developed.[3]

As set forth above, the ALJ also imposed a nonexertional limitation related

to Mr. Ramirez's knee and/or back pain, finding that he must be limited to only

"occasional kneeling and crawling."  Aplt. App., Vol. 1 at 18.  Although we

anticipate that this limitation may not restrict Mr. Ramirez's ability to perform

most of the jobs in the light work category, as with Mr. Ramirez's environmental

---

[3]      If, on remand, the Commissioner determines that Mr. Ramirez's
nonexertional impairments are significant enough to prevent him from performing
most of the jobs in the light work category, "then [the Commissioner] may not
rely [conclusively] on the grids but instead must give 'full consideration' to 'all
[of] the relevant facts,' App. 2, § 200.00(e)(2), including expert vocational
testimony if necessary, in determining whether [Mr. Ramirez] is or is not
disabled."  *Channel*, 747 F.2d at 583.

restrictions, there is no vocational evidence in the administrative record concerning this limitation. To remedy this deficiency, we direct the ALJ on remand to develop vocational evidence to support his conclusive use of the grids with regard to Mr. Ramirez's pain impairments. Further, in order to clarify the administrative record, we direct the ALJ to make specific findings on remand concerning whether there are any other significant nonexertional limitations related to Mr. Ramirez's pain impairments that could be vocationally relevant.

**B.  The ALJ's Step-Four Findings and Dr. Davis.**

In his decision, the ALJ initially concluded that Mr. Ramirez could "perform his past relevant work as a truck driver because it is within [his] residual functional capacity." Aplt. App., Vol. I at 18. However, "because of the nature of his truck driving work, as a seasonal job," the ALJ "proceed[ed] with the step five analysis, which also [led him] to a conclusion of 'not disabled.'" *Id.* Although the ALJ did not explain his reasoning on this point, we note that the administrative record indicates that Mr. Ramirez performed his prior job as a truck driver for only six weeks out of the year. *Id.* at 68, 123, 129. Consequently, we conclude that the ALJ correctly determined that this job could not qualify under the controlling regulations as "substantial gainful activity" due to the minimal annual monetary earnings involved, and that the job could therefore not be considered as past relevant work for purposes of step four. *See* 20 C.F.R. §§ 404.1560(b)(1) and 416.960(b)(1), 404.1565(a) and 416.965(a), 404.1571-76 and 416.971-76 (defining

-11-

term "past relevant work" as work that was "substantial gainful activity" and setting forth earnings and other criteria for determining at step four whether a claimant has engaged in prior "substantial gainful activity"). As a result, we further conclude that the ALJ in effect abandoned his step-four finding of "not disabled," and we therefore do not need to address it.

In order to clarify the administrative record, however, and noting that the ALJ should assess RFC once, in detail, at step four, *see Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996), we direct the ALJ to make specific written findings on remand explaining why he did not adopt Dr. Davis's opinion that Mr. Ramirez was unable to work when he assessed Mr. Ramirez's RFC at step four. Soc. Sec. R. 96-8p specifically provides that "[t]he RFC assessment must always consider and address medical source opinions. *If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted*." 1996 WL 374184, at *7 (emphasis added). Despite this clear directive, there is not a single reference in the ALJ's decision to the opinions that are set forth in the "Summary" section of Dr. Davis's report. In fact, the only reference to Dr. Davis in the ALJ's decision is a single sentence stating that "Dr. Davis reported that claimant's hypertension seemed to be under control." Aplt. App., Vol. I at 15.

Because Dr. Davis's opinion that Mr. Ramirez was unable to work conflicts with the ALJ's determination that Mr. Ramirez could perform light work, we

direct the ALJ to make specific findings on remand explaining why he did not adopt Dr. Davis's opinion.  Although the issue of whether Mr. Ramirez was able to work is an issue reserved to the Commissioner, *see* 20 C.F.R. §§ 404.1527(e)(1) and 416.927(e)(1), the controlling rules nonetheless "provide that adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner."  Soc. Sec. R. 96-5p, 1996 WL 374183, at *2; *see also id.* at *5 (stating that "[medical source] opinions on [issues reserved to the Commissioner] must not be disregarded").

The judgment of the district court is REVERSED and this case is REMANDED to the district court with instructions to REMAND the case to the Commissioner for further proceedings consistent with this order and judgment.

Entered for the Court

Terrence L. O'Brien
Circuit Judge

-13-