**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 5, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ARTHUR NOREJA,

     Plaintiff - Appellant,

v.

COMMISSIONER, SSA,

     Defendant - Appellee.

No. 18-1383

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:17-CV-02047-CMA)**
_____

Lawrence D. Saunders, Pueblo, Colorado, appearing for Appellant.

Noah M. Schabacker, Special Assistant United States Attorney, Assistant Regional Counsel, Social Security Administration, Denver, Colorado (Jason R. Dunn, United States Attorney, Office of the United States Attorney for the District of Colorado, Denver, Colorado, and Mona Ahmed, Acting Regional Chief Counsel, Office of the General Counsel, Region VIII, Social Security Administration, Denver, Colorado, with him on the briefs), appearing for Appellee.
_____

Before **BRISCOE**, **LUCERO**, and **EID**, Circuit Judges.
_____

**BRISCOE**, Circuit Judge.
_____

Arthur Noreja appeals the denial of his claim for disability benefits. Noreja

alleges that the Administrative Law Judge ("ALJ") failed to follow an instruction in a

remand order from the Appeals Council, the entity responsible for adjudicating administrative appeals in Social Security cases. We hold that (1) we have jurisdiction to determine whether an alleged ALJ violation of an Appeals Council order warrants reversal; but (2) our "usual" review standards remain in force, meaning that the alleged violation is material only if it shows the ALJ meaningfully failed to apply the correct legal standards, or the denial of benefits is unsupported by substantial evidence; and (3) applying those standards here, the ALJ's denial of Noreja's application must be affirmed.

I

Noreja filed his disability claim in March 2012. Volume I, Administrative Record ("I Admin. R.") at 129. In July 2013, following a hearing, an ALJ issued a detailed written order – exceeding 13 pages with single spacing – in which she denied Noreja's claim. *Id.* at 129–42. After summarizing the five-step process for determining disability, *id.* at 129–31, the ALJ stated that Noreja had several severe impairments, including "arthritis of the left upper extremity and right lower extremity," "cognitive disorder," and "headaches." *Id.* at 131 (emphasis omitted). Nevertheless, the ALJ determined that these impairments (or a combination of the impairments) did not warrant relief under 20 C.F.R. part 404, subpart P, appendix 1. *Id.* at 132. Among other things, the ALJ found that "the claimant's mental impairment does not meet or medically equal the criteria of listing 1202." *Id.* at 133–34. The ALJ also found that Noreja had the residual functional capacity ("RFC") to do "medium" work, subject to various limitations, and that there were "jobs that exist in significant numbers in the national economy" which Noreja could perform. *Id.* at 134, 141 (emphasis omitted). The ALJ considered various sources of

2

medical evidence, including (1) assessments provided by Dr. Michael A. Dallenbach following Noreja's involvement in a car accident in February 2011, *id.* at 135–36; (2) a June 2012 "consultative examination" of Noreja by Kent J. Lofley, D.O., which qualified Noreja's limitations, *id.* at 136, 138; (3) a June 2013 "psychological examination" of Noreja by Richard B. Madsen, Ph.D., which supported a finding of cognitive impairment, *id.* at 136–37; (4) a May 2013 questionnaire filled out by one of Noreja's primary care physicians, Dr. Ben Martinez, *id.* at 139; and (5) a review of Noreja's case file by James J. Wanstrath, Ph.D. *Id.* at 139–40. The ALJ evaluated the evidence, decided that Dr. Madsen's opinion was entitled to "little weight," and concluded that Noreja was not cognizably disabled. *Id.* at 136–40, 142.

Noreja asked the Appeals Council to review the ALJ's July 2013 decision. The Appeals Council obliged, and in March 2015 issued a written order vacating the ALJ's decision and remanding the case for further proceedings. *Id.* at 149–50. The Appeals Council noted that the ALJ neither adopted the limitations identified by Dr. Madsen, nor assigned Dr. Madsen's opinion significant weight, because according to the ALJ, Dr. Madsen did not "have a treating relationship with the claimant, apparently relied quite heavily on subjective complaints, and only examined the claimant to generate evidence for his disability claim." *Id.* at 149. The Appeals Council disagreed with the ALJ's assessment, stating not only that "[i]t does not appear Dr. Madsen had to rely on subjective complaints to form his opinion," but also that Dr. Madsen's "objective exam results" showed Noreja had multiple cognitive impairments. *Id.* The Appeals Council observed that "[i]f Dr. Madsen's opinion merits less weight based on the manner by

3

which it was obtained, then these results should be confirmed or contradicted by impartial consultative examination." *Id.* The Appeals Council then issued this directive:

> Upon remand the Administrative Law Judge will:
>
> - Obtain additional evidence concerning the claimant's mental impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 404.1512-1513 and 416.912-913). The additional evidence should include, if available, a consultative mental examination with psychological testing and medical source statements about what the claimant can still do despite the impairment.

*Id.* at 149–50 (bullet in original).

The case was remanded to the same ALJ, who held another hearing. *Id.* at 11–12. In May 2016, the ALJ issued another detailed written order, this time exceeding 17 single-spaced pages, denying Noreja's claim. *Id.* at 11–28. After again summarizing the five-step procedure for determining disability, *id.* at 12–14, the ALJ expanded the list of Noreja's severe impairments to include "right hip and ankle degenerative joint disease," "left shoulder degenerative joint disease," "headaches," "depressive disorder," and "cognitive disorder." *Id.* at 14–15 (emphasis omitted). Once more, however, the ALJ determined that Noreja did not have "an impairment or combination of impairments" that warranted relief under 20 C.F.R. part 404, subpart P, appendix 1. *Id.* at 15 (emphasis omitted). The ALJ found that "the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.02 and 12.04." *Id.* at 16–17. The ALJ reiterated that Noreja had the RFC to do "medium" work, subject

4

to various limitations, and that there were "jobs that exist in significant numbers in the national economy" which Noreja could perform. *Id.* at 17, 27 (emphasis omitted).

The ALJ did not obtain a new consultative mental examination before issuing her May 2016 decision, but she procured additional evidence regarding Noreja's impairments. This additional evidence included further mental health treatment records (*e.g., id.* at 22–23) and (1) an assessment of Noreja by Dr. Timothy Papsidero, *id.* at 20, 23; (2) a June 2013 neurological evaluation of Noreja by Dr. Richard Gamuac, *id.* at 20–21; (3) an initial evaluation of Noreja for purposes of therapy by Lesli St. John, *id.* at 23–24; and (4) testimony from James Bruce, Ph.D., who opined that Noreja's mental health impairments "include listings 12.02 and 12.04" but Noreja "would be able to perform simple tasks" in an environment involving "occasional and superficial contact" with co-workers and the public. *Id.* at 18, 24–25. In light of the overall record, *id.* at 18–26, the ALJ reaffirmed her decision to afford Dr. Madsen's opinion "little weight." *Id.* at 23, 25. In contrast, the ALJ assigned "great weight" to Dr. Bruce's assessment, as Dr. Bruce was "a mental health specialist" who "had the opportunity to evaluate the complete record" and to "hear the claimant's testimony." *Id.* at 25. The ALJ assigned "great weight" to Dr. Lofley's assessment of Noreja as well. *Id.* at 21 (brackets added). For a second time, the ALJ found no disability under the governing legal standards. *Id.* at 26, 28.

Noreja asked the Appeals Council to review the ALJ's May 2016 decision. The Appeals Council denied Noreja's second request for review. In a July 2017 written order, the Appeals Council explained that it "found no reason" to examine the ALJ's decision under Appeals Council rules, which rules permitted review for an abuse of discretion, an

5

error of law, a lack of substantial evidence, a "broad policy or procedural issue that may affect the public interest," or significant new evidence. *Id.* at 1–2. The Appeals Council eschewed a second review of Noreja's case based on the ALJ's alleged noncompliance with the remand order, stating as follows:

> [Y]our representative alleged that the Administrative Law Judge failed to comply with the prior order of remand and that this demonstrates bias and lack of basic due process (Exhibit 19E/2). The Appeals Council considered the allegations solely as they relate to abuse of discretion. After reviewing the entire record, including the hearing recording, the Appeals Council determined that the Administrative Law Judge did not abuse his or her discretion in this case and that none of the other reasons in our rules existed to review your case.

*Id.* at 1 (brackets added).

Noreja appealed to federal district court. Appellant's Appendix at 4–5. The district court affirmed the decision of the Commissioner of Social Security (the "Commissioner"), as reflected in the ALJ's May 2016 order. *Id.* at 48, 79. The district court concluded that the Appeals Council "left the decision up to the ALJ as to whether she deemed another consultative mental examination with psychological testing necessary." *Id.* at 67; *see also id.* ("[A] review of the Appeals Council's remand order makes clear that it did not order the ALJ to obtain a consultative mental examination; it merely determined that additional evidence was required to support the ALJ's assignment of little weight to Dr. Madsen's opinion."). The district court emphasized that the ALJ on remand "obtained additional evidence sufficient to complete the administrative record," including Dr. Bruce's opinion on Noreja's mental impairments and "several more specific pieces of evidence that do not support the level of limitations that Dr. Madsen

described." *Id.* at 68. Noting the Appeals Council's decision in July 2017 to decline further review, the district court added that "the Appeals Council was apparently satisfied that the ALJ complied with its remand order." *Id.* at 69. The district court rejected Noreja's remaining arguments that the ALJ improperly accorded no weight to Dr. Martinez's opinions, *id.* at 65, 69–73; failed to include all of the work restrictions identified by Dr. Bruce, *id.* at 65, 74–76; and erroneously gave minimal weight to the opinions of Dr. Madsen. *Id.* at 65, 76–79.

## II

We have previously addressed the import of an ALJ's failure to follow a directive from an Appeals Council, but only in unpublished dispositions. Tenth Circuit Rule 32.1(A) provides that "[u]npublished decisions are not precedential, but they may be cited for their persuasive value." Our case law generally follows that principle, looking in appropriate circumstances to an unpublished opinion if its rationale is persuasive and apposite to the issue presented. *See, e.g., United States v. Engles*, 779 F.3d 1161, 1162 n.1 (10th Cir. 2015) (stating that "[a]lthough unpublished orders and opinions generally are not considered binding precedent," such an order or opinion "may be relied on for the purpose of disposing the issue presented if it has persuasive value with respect to a material issue in a case and would assist the court in its disposition"); *United States v. Lyons*, 510 F.3d 1225, 1233 n.2 (10th Cir. 2007) (mentioning an unpublished decision "as we would an opinion from another circuit, persuasive because of its reasoned analysis").

One of our first notable references to ALJ compliance with an Appeals Council directive was in *Scott v. Chater*, 70 F.3d 1282 (10th Cir. Nov. 24, 1995) (unpublished).

7

There, an ALJ denied benefits but the Appeals Council remanded the matter with instructions. *Id.* at *1. The ALJ then denied benefits a second time. *Id.* We reversed and remanded, holding that the ALJ improperly assessed the evidence. *Id.* at *2–5. We concluded that "the ALJ's decision was not supported by substantial evidence, was not reached by application of the proper rules, and did not comply with the directives of the Appeals Council on remand." *Id.* at *6. After *Scott*, we issued several more opinions implying that a federal court has the authority to evaluate ALJ compliance with an Appeals Council order. *See, e.g., Rice v. Apfel*, 242 F.3d 390, *6 & n.1 (10th Cir. Nov. 14, 2000) (unpublished) (holding that an ALJ did not "fail to comply with the remand instructions of the district court and the Appeals Council," but noting that any such instructions were not specific); *Gardner-Renfro v. Apfel*, 242 F.3d 388, *2 (10th Cir. Dec. 18, 2000) (unpublished) (determining that an ALJ "did not fail to comply with the remand instructions of the district court or the Appeals Council"); *Garza v. Apfel*, 162 F.3d 1173, *2 (10th Cir. Nov. 5, 1998) (unpublished) (rejecting the argument that "the ALJ took action inconsistent with the Appeals Council's order on remand").

Our decision in *Gallegos v. Apfel*, 141 F.3d 1184 (10th Cir. Apr. 10, 1998) (unpublished) arguably suggested a different approach. *Gallegos* again involved ALJ denials of benefits before and after an Appeals Council remand. *Id.* at *1. We held that a "challenge to the ALJ's adherence to the Appeals Council's remand order is not cognizable by this court. By statute, our jurisdiction extends only to the Commissioner's final decision, which in this case is the ALJ's second decision." *Id.* (citing, among other things, 42 U.S.C. § 405(g)). We qualified that ruling by noting "Plaintiff does not argue

8

that the ALJ failed to adhere to a legal requirement to obtain additional medical evidence in reaching her second, final decision, but only that the ALJ did not follow the Appeals Council's direction." *Id.*

A few years later, we decided *Miller v. Barnhart*, 175 F. App'x 952 (10th Cir. 2006) (unpublished). Unlike in *Gallegos*, the parties in *Miller* pointed out that Social Security regulations require an ALJ to take any action on remand that is ordered by the Appeals Council. *Id.* at 955 (citing 20 C.F.R. § 404.977(b)). But we observed in *Miller* that the claimant erroneously interpreted the Appeals Council's instructions, and in a second administrative appeal, the Appeals Council found that the ALJ "complied with its remand order." *Id.* at 956. "Under these circumstances," we said, "it is appropriate to examine the Commissioner's final decision under our usual standards, rather than focusing on conformance with the particular terms of the remand order." *Id.*

### III

The standard for judicial review in Social Security cases is well settled. "Our review is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014). We do not defer to the district court when evaluating the Commissioner's decision. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) ("We review the district court's decision de novo and independently determine whether the ALJ's decision is free from legal error and supported by substantial evidence."). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Id.* at 1261–62 (citation omitted). "We may neither reweigh the evidence nor substitute our judgment for that of the agency." *Knight*, 756 F.3d at 1175 (citation and brackets omitted). "The agency's failure to apply correct legal standards, or show us it has done so, is also grounds for reversal." *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004).

No party in this matter challenges the court's subject matter jurisdiction, but we are of course required to satisfy ourselves that we have the authority to proceed. Consistent with our unpublished decision in *Miller*, 175 F. App'x at 956, we now reaffirm the use of our usual review standards when considering allegations that an ALJ failed to comply with an Appeals Council remand order. As discussed below, Congress specified in 42 U.S.C. § 405(g) that courts are to evaluate denials of Social Security benefits by ascertaining whether the Commissioner's decision applies the correct legal standard and is supported by substantial evidence. An ALJ violates 20 C.F.R. §§ 404.977(b) and 416.1477(b) when he or she ignores a directive from the Appeals Council. That violation may or may not render the ALJ's decision legally or factually insupportable under 42 U.S.C. § 405(g). It is within our jurisdiction to consider alleged non-compliance as it pertains to our review under the statute.

The modern jurisprudential trend is toward greater precision in analyzing whether a statutory provision truly concerns "jurisdiction." In recent years, the Supreme Court has undertaken "[t]o ward off profligate use of the term." *Sebelius v. Auburn Reg'l Med.*

10

*Ctr.*, 568 U.S. 145, 153 (2013) (brackets added). Noting the overuse of "jurisdictional" classifications, the high court has emphasized that the word "is generally reserved for prescriptions delineating the classes of cases a court may entertain (subject-matter jurisdiction) and the persons over whom the court may exercise adjudicatory authority (personal jurisdiction)." *Fort Bend Cty., Tex. v. Davis*, 139 S. Ct. 1843, 1848 (2019). "If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue." *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 161 (2010) (citation omitted). "But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Id.* at 161–62 (citation omitted); *see also United States v. Kwai Fun Wong*, 575 U.S. 402, 409–10 (2015) (reiterating that the Court has "repeatedly" held procedural rules "cabin a court's power only if Congress has clearly state[d] as much," and without such a clear statement, "courts should treat the restriction as nonjurisdictional") (citations omitted, brackets in original).

The relevant statute in this case is 42 U.S.C. § 405(g). That subsection provides for "Judicial review" of final decisions of the Commissioner. *See id.* ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain review of such a decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.") The law states that:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied by the Commissioner of Social Security or a decision is rendered under subsection (b) of this section which is adverse to an individual who was a party to the hearing before the Commissioner of Social Security, because of failure of the claimant or such individual to submit proof in conformity with any regulation prescribed under subsection (a) of this section, the court shall review only the question of conformity with such regulations and the validity of such regulations.

*Id.*

Section 405(g) of title 42 may be more than a claim-processing provision, but it does not strip federal courts of jurisdiction to consider all arguments regarding an ALJ's compliance with an Appeals Council order. The statute vests federal tribunals with authority to hear cases concerning final decisions of the Commissioner denying benefits. The law dictates the manner in which courts should evaluate such a final decision; courts are to treat factual findings supported by substantial evidence as "conclusive," and to look at regulatory compliance (and the validity of the underlying regulations) when a claimant's proof is deemed inadequate. If an ALJ violation of an Appeals Council remand order does not materially implicate compliance with a proof-related rule or regulation, then that means the claimant's challenge to the Commissioner's decision will fail on the merits. It does not mean that the court lacks authority to hear the argument in the first place.

Characterizing any review of ALJ noncompliance as beyond the court's authority is inconsistent with the shift toward greater jurisdictional precision. It also invites courts

12

to give this issue the back of the hand, without examining whether a violation of an Appeals Council remand order materially misapplies legal requirements or robs an ALJ's decision of substantial evidence. While some district courts go on to apply these "usual standards" when confronted with an ALJ's alleged failure to follow an Appeals Council order, others invoke a "jurisdictional" argument and refuse to consider the issue at all.

Declining to review the issue at all sweeps too broadly, because an ALJ's failure to follow an Appeals Council remand order will often implicate conformity with a proof-related rule or regulation. An ALJ "shall take any action that is ordered by the Appeals Council and may take any action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. §§ 404.977(b), 416.1477(b); *see also Hayden v. Barnhart*, 374 F.3d 986, 992 n.9 (10th Cir. 2004) (citing 20 C.F.R. § 402.35(b) for the proposition that Social Security Rulings, or SSRs, are also "binding on the ALJ"). When the Appeals Council remands a case with instructions, those instructions become legal requirements with which the ALJ is bound to comply. If the Appeals Council directs the ALJ to take additional or different steps to build or evaluate the record, then the remand order supplements or affirms the rules shaping the evidence that is available or pertinent to the claimant.

Reviewing an ALJ's compliance with such rules is hardly unusual, and within a federal court's authority under 42 U.S.C. § 405(g). Indeed, for jurisdictional purposes, there is little difference between reviewing an ALJ's decision for compliance with a remand order under 20 C.F.R. §§ 404.977(b) and 416.1477(b) and reviewing an ALJ's decision for compliance with other regulations relating to gathering and evaluating

13

evidence. We issue reversal orders all the time based at least in part on an ALJ's failure to comply with the latter.[1]

Jurisdiction is not lacking because Appeals Council remand orders are not "final decisions" under the applicable statute. It is true that a post-remand ALJ opinion generally constitutes the "final decision" of the Commissioner, and we have held (assuming there is no constitutional challenge) that "we do not have subject matter jurisdiction under 42 U.S.C. § 405(g) to review the propriety of the Appeals Council's remand order." *Martinez v. Barnhart*, 444 F.3d 1201, 1204–05 (10th Cir. 2006). But reviewing a final decision by an ALJ for compliance with an Appeals Council order is not the same thing as reviewing the Appeals Council order itself. As part of our review

---

[1] *See, e.g., Harrold v. Berryhill*, 714 F. App'x 861, 865, 869–71 (10th Cir. 2017) (unpublished) (20 C.F.R. §§ 404.1520(a) and 404.1527(c), plus SSR 96-7p and 06-03p); *Winick v. Colvin*, 674 F. App'x 816, 820 (10th Cir. 2017) (unpublished) (20 C.F.R. §§ 404.1527(c) and 416.927(c)); *Brown v. Colvin*, 595 F. App'x 803, 805 (10th Cir. 2014) (unpublished) (20 C.F.R. § 416.928(a) and SSR 96-7p); *Bledsoe v. Colvin*, 544 F. App'x 823, 824–26 (10th Cir. 2013) (unpublished) (20 C.F.R. §§ 416.927(c) and 416.928(a)); *Chrismon v. Colvin*, 531 F. App'x 893, 900–01 (10th Cir. 2013) (unpublished) (20 C.F.R. §§ 404.1527(d), 416.912(d), and 416.927(d)); *Murdock v. Astrue*, 458 F. App'x 702, 704 (10th Cir. 2012) (unpublished) (20 C.F.R. part 404, subpt. P, app. 1 § 1.02); *Kilinski v. Astrue*, 430 F. App'x 732, 736–38 (10th Cir. 2011) (unpublished) (20 C.F.R. §§ 404.1545(a)-(b) and SSR 96-8p); *Grotendorst v. Astrue*, 380 F. App'x 879, 882–83 (10th Cir. 2010) (unpublished) (20 C.F.R. §§ 404.1520a and 404.1545(e)); *Ramirez v. Astrue*, 255 F. App'x 327, 330 (10th Cir. 2007) (unpublished) (20 C.F.R. §§ 404.1569a and 416.969a, along with 20 C.F.R. part 404, subpt. P, app. 2 § 200.00); *Salazar v. Barnhart*, 468 F.3d 615, 621–26 (10th Cir. 2006) (20 C.F.R. §§ 416.920(a), 416.923, 416.927(d), 416.935(a)-(b), and 416.945, plus 20 C.F.R. part 404, subpt. P, app. 1 § 12.08); *Smith v. Barnhart*, 172 F. App'x 795, 799–801 (10th Cir. 2006) (unpublished) (20 C.F.R. part 404, subpt. P, app. 1 § 12.05(C) and SSR 00-4p); *Lackey v. Barnhart*, 127 F. App'x 455, 457 (10th Cir. 2005) (unpublished) (20 C.F.R. §§ 404.1527(a), (d), and (e), combined with SSR 96-5p); *Allen v. Barnhart*, 357 F.3d 1140, 1143 (10th Cir. 2004) (20 C.F.R. §§ 404.1569 and 404.1569a, along with 20 C.F.R. part 404, subpt. P, app. 2 § 200.00).

of a final decision under § 405(g), we may consider whether the ALJ complied with any legal requirements imposed by the Appeals Council upon remand. Absent a constitutional-level objection, this review is neutral as to the appropriateness of the Appeals Council's directions. It is thus similar to measuring the ALJ's decision against other legally binding regulatory requirements concerning the collection and assessment of evidence. Such a review does not culminate in a judicial decision affirming or reversing the remand order from the Appeals Council. It culminates in a judicial decision affirming or reversing the order from the ALJ.

IV

Noreja's sole substantive argument on appeal is that the ALJ's failure to follow a directive from the Appeals Council to acquire another examination constitutes reversible error. We conclude that the ALJ did not, in fact, violate the Appeals Council's remand order. The Appeals Council stated that the ALJ "will" obtain additional evidence "to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence[.]" I Admin. R. at 149 (brackets added, citing 20 C.F.R. §§ 404.1512–13 and 416.912–13). The Appeals Council added that this supplementary evidence "should" include, if available, a consultative medical examination. *Id.* at 149–50.

The language in the Appeals Council's order is significant. The order used the term "will" when it generally directed the ALJ to obtain additional evidence concerning Noreja's mental impairments. The order used the term "should" in connection with its specific reference to a consultative medical examination. In this context, the only

15

*mandatory* directive to the ALJ was to obtain additional evidence on a particular topic, which evidence might or might not include a new examination. *Cf. United States v. Tisdale*, 248 F.3d 964, 977 (10th Cir. 2001) (holding that a Sentencing Guideline provision using the word "should" was permissive rather than mandatory, because in common parlance "[t]he phrase 'should be' is defined as something that 'ought to be,'" while "'shall' is 'used to express a command or exhortation,' and is 'used in laws, regulations, or directives to express what is mandatory'") (brackets added, citations omitted). Similarly, the order commanded the ALJ to obtain additional evidence in accordance with identified regulatory standards. As they relate to consultative medical examinations, those standards are also permissive. *See* 20 C.F.R. § 404.1512(b)(2) (indicating that the Commissioner "may" ask a claimant to attend a consultative examination, and generally "will not request" such an examination "until we have made every reasonable effort to obtain evidence from your own medical sources"); *id.* § 416.912(b)(2) (same); *see also id.* § 404.1519a(a) ("If we cannot get the information we need from your medical sources, we may decide to purchase a consultative examination.").

The ALJ not only complied with the remand order by obtaining additional proof, but also supported her denial of Noreja's application for disability benefits with substantial evidence. The new materials relied upon by the ALJ on remand included mental health treatment records and testimony about Noreja's status from Dr. Bruce. Combined with the rest of the evidence, that was more than enough to qualify as what "a reasonable mind might accept as adequate to support a conclusion." *Grogan*, 399 F.3d at

16

The ALJ carefully compared and weighed this proof against the opinions presented by Dr. Madsen. I Admin. R. at 17–26.[2] We are not at liberty to second-guess the ALJ's determination. *Knight*, 756 F.3d at 1175.

V

For the foregoing reasons, the Commissioner's denial of Noreja's claim for Social Security benefits is affirmed.

---

[2] The ALJ recapped her analysis as follows:

> In sum, these findings are supported by the objective record and reports of the claimant's daily activities. Objective imaging confirmed mild degenerative joint disease in the right ankle, right hip, and left shoulder, while clinical findings support pain and limitation with range of motion of these joints. The claimant was consistent in his reports of headaches, and a neurologist prescribed medication to treat this impairment. Further, mental health assessments confirmed mild cognitive deficits and symptoms associated with depressive disorder, to include lack of interest, social isolation, and irritability. However, he did not require the use of an assistive device to walk, and he was still able to engage in activities such as bicycle riding and yardwork. Further, he was described as pleasant upon examination, and objective mental assessments indicate his psychological symptoms were no more than mild. Therefore, due to the symptoms caused by his severe impairments previously discussed, the undersigned finds that the claimant retained the ability to perform work with the limitations described in the residual functional capacity outlined above.

I Admin. R. at 26.