**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 10, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

LAURA M. FORD,

     Plaintiff - Appellant,

v.

COMMISSIONER, SSA,

     Defendant - Appellee.

No. 19-3171
(D.C. No. 2:18-CV-02373-JWL)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **BALDOCK**, and **KELLY**, Circuit Judges.
_____

The Social Security Act provides for the payment of disability insurance

benefits (DIB) to qualifying individuals who have "not attained retirement age."

42 U.S.C. § 423(a)(1)(B). When an individual who has been receiving DIB reaches

full retirement age, her entitlement to DIB ends and those benefits are automatically

converted to old-age benefits. *See* 20 C.F.R. § 404.316(b)(2). Ms. Ford, the pro se

plaintiff in this action, received DIB beginning in 1990. When she reached full

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

retirement age in 2015, the Social Security Administration (SSA) notified her that she was no longer entitled to DIB but would begin receiving old-age benefits in the same amount as her previous monthly disability benefit. She challenged that determination and received a hearing before an administrative law judge (ALJ), who affirmed it. She sought review in the district court, which affirmed the ALJ's determination. She has now appealed to this court. Exercising jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g), we affirm.

## I. **BACKGROUND**

In 1990, Ms. Ford filed applications for DIB and Supplemental Security Income (SSI) benefits. The SSA determined that she had become disabled on December 27, 1989, and it granted the application for DIB. But it denied her SSI application, apparently because her income was too high to qualify for those benefits. *See generally* 42 U.S.C. § 1382(a) (setting income eligibility requirements for receipt of SSI benefits by disabled individuals).

Ms. Ford began receiving monthly DIB in June 1990. In February 2015, the SSA notified her that she was no longer entitled to disability benefits because she had reached her full retirement age. The notice explained that the amount of her monthly benefits would remain the same but that she would now begin receiving old-age benefits instead of DIB. She appealed the notice, stating "I need my Retirement benefits and all other Benefits I am entitle[d to]." R. at 46. The SSA responded that her monthly benefit would remain the same but would "now be made from the Social Security retirement trust fund rather than the disability trust fund." *Id.* at 49. The

2

SSA upheld that decision on reconsideration. Ms. Ford then requested a de novo hearing before an ALJ.

Before the ALJ hearing, Ms. Ford contacted the SSA and requested a copy of her medical records. She was told "there are none on this claim." *Id.* at 88. Ms. Ford later complained to the ALJ that she had requested her disability file but had not received it. The ALJ explained that the disability file, if it still existed, was not relevant to the issues he needed to resolve.

At the hearing, Ms. Ford asserted that she had been receiving SSI benefits, not DIB. *See id.* at 133. She stated she believed she was entitled to DIB because she had worked for 12 years before her disability and paid into the system during these years. The ALJ rejected Ms. Ford's assertion that she had been receiving SSI benefits rather than DIB. He further explained that the change in her DIB status was a trust-fund change only, from the disability trust fund to the retirement trust fund. This change did not imply that she was no longer disabled. Nor did it disadvantage her or change the amount of benefit that she received. Based on the totality of the evidence, the ALJ concluded Ms. Ford had failed to show a basis for reversing the agency decision.

Ms. Ford sought review from the Appeals Council. She submitted additional evidence with her request for review. The Appeals Council found that she had not shown a reasonable probability that her new evidence would change the outcome of the ALJ's decision. It denied the request for review, making the ALJ's decision the final agency decision.

## II. DISCUSSION

Our review of the Commissioner's decision in a social security case "is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Comm'r, SSA*, 952 F.3d 1172, 1177 (10th Cir. 2020) (internal quotation marks omitted). "We do not defer to the district court when evaluating the Commissioner's decision." *Id.* at 1177-78. Because Ms. Ford is proceeding pro se, we liberally construe her filings but we will not act as her advocate. *See James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013).

### A. *Conversion to Old-Age Benefits*

DIB and old-age benefits are authorized under Title II of the Social Security Act (Act), 42 U.S.C. §§ 401-434. They are funded by employment taxes and are administered through statutorily authorized trust funds. Eligibility for DIB or old-age benefits depends on insured status, which generally requires that the insured has paid into the Social Security fund for a designated period. *See id.* §§ 414, 423(a).

In 1939, Congress established the "Federal Old-Age and Survivors Insurance Trust Fund," which is used to provide old-age insurance benefits to qualifying recipients. Social Security Act Amendments of 1939, Pub. L. No. 76-379, § 201, 53 Stat. 1360, 1362; codified as amended at 42 U.S.C. § 401(a). By the 1950's, Congress became concerned about disabled workers who were insured for old-age benefits under the Act but were no longer able to work and therefore faced "a period of destitution after the onset of their disability until they were eligible to receive old-

4

age benefits." *Sanchez v. Schweiker*, 656 F.2d 966, 968 (5th Cir. 1981). To remedy this problem, "Congress expanded the Social Security program to provide [DIB] as an adjunct to old-age benefits." *Id.* DIB funds provide "early eligibility for old-age benefits," *id.*, but are held in a separate fund known as the "Federal Disability Insurance Trust Fund," 42 U.S.C. § 401(b).

When a disabled person reaches full retirement age, she is no longer eligible for DIB payments and instead becomes entitled to old-age benefits. *See* 42 U.S.C. § 423(a)(1)(B); 20 C.F.R. § 404.316(b)(2); *Sanchez*, 656 F.2d at 968 ("Because disability insurance was, in fact, early eligibility for old-age benefits, Congress provided that when the insured became eligible for old-age benefits his monthly disability benefits would cease."). These benefits are then paid from the fund set aside for old-age benefits rather than the disability fund.

In contrast to DIB and old-age benefits, SSI is authorized under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f, and is funded from general tax revenues. SSI is a public assistance program that provides a benefit to the aged, blind, and disabled who meet certain income and resource requirements. It was designed to prevent the recipients from falling below the poverty line. *See id.* § 1382.

An individual who is disabled and meets the requirements for *both* DIB and SSI may receive benefits from both programs. *See* 20 C.F.R. §§ 416.350, 416.420. As noted, Ms. Ford applied for both DIB and SSI benefits in 1990, but the SSA determined she was ineligible for SSI. The evidence she submitted to the Appeals

5

Council confirms that she has been receiving DIB, *not* SSI benefits, since 1990. *See* R. at 96-98, 100.[1] She does not contest that she has reached her full retirement age. In light of the evidence, she fails to show that the agency erred as a legal matter by converting her DIB benefits to old-age benefits.[2]

## B. *Other Issues*

Ms. Ford also complains that the SSA "didn't give me my papers in my file." Aplt. Opening Br. at 2. The record shows that before her administrative hearing, the SSA informed her several times of the steps she could take to see the evidence in her file. *See* R. at 61, 70, 80. And although it appears neither the SSA nor the ALJ provided her with the medical records that supported her original 1990 application, this was not reversible error. The issue in this proceeding was not whether her medical records showed that Ms. Ford was disabled (an issue already resolved in her favor 30 years ago) but instead whether the SSA properly converted her DIB to old-age benefits. Ms. Ford fails to show that her medical records were relevant to that issue or to her argument that she was receiving SSI rather than DIB (which

---

[1] The ALJ found that Ms. Ford's initial DIB benefit in June 1990 was $520. This figure is consistent with her hearing testimony. *See* R. at 134. The Commissioner notes this monthly benefit amount exceeds the statutory maximum SSI payment for an eligible individual in 1990. *See* SSI Federal Payment Amounts, https://www.ssa.gov/OACT/COLA/SSIamts.html (last visited June 2, 2020). Thus, the Commissioner argues, she could not have been receiving only SSI benefits in connection with her disability, as she claims.

[2] As the district court noted, if Ms. Ford believes she is eligible for SSI benefits in addition to her old-age benefits, she may make a new application with the SSA.

6

involves an income-based calculation), or that she was denied access to other pertinent records in her file.

Finally, Ms. Ford complains that the ALJ did not look at the papers she brought to the hearing. She does not identify which papers the ALJ allegedly failed to review, and the hearing transcript does not seem to indicate that the ALJ was presented with papers but refused to review them. *See* R. at 130-42. In addition, as noted, after the ALJ issued his decision, Ms. Ford was provided the opportunity to submit additional evidence to the Appeals Council. She did so. Ms. Ford has not shown the Appeals Council erred when it concluded that this additional evidence did not show a reasonable probability that it would change the outcome.

## III. CONCLUSION

We affirm the district court's judgment.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge